UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| MARK HILL, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Civil Action No. _____ |
| FFS, INC., AND<br>GARNER & CONNER, PLLC, | ) |  |
| Defendants. | ) |  |

# COMPLAINT

## INTRODUCTION

1. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") in their illegal efforts to collect a consumer debt.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3. Venue is proper in this District because the acts and transactions occurred here and Plaintiff resides here.

## PARTIES

4. Plaintiff Mark Hill ("Plaintiff") is a natural person who resides in Hamblen County, Tennessee, and a "consumer" as defined by 15 U.S.C. § 1692a(3).

5. Defendant FFS, Inc. ("FFS") is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

6. Defendant Garner & Conner, PLLC ("Garner") is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

1

## FACTUAL ALLEGATIONS

7. Defendants have alleged Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and the obligation is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely a deficiency balance, alleged to be originally owed to Huntington National Bank ("Huntington").

8. After default, FSS purchased the debt from Huntington or an assignee of Huntington for purposes of collection from Plaintiff.

9. FFS is regularly engaged in purchasing defaulted consumer debts and attempting to collect them by making telephone calls, sending collection letters, and hiring law firms to file collection lawsuits with FFS as the named state court plaintiff.

10. Garner is regularly engaged in collection of consumer debts owed or due or asserted to be owed or due another and attempts to collect the debts by making telephone calls, sending collection letters, filing collection lawsuits, recording judgment liens, and having garnishments and levies issued on behalf of its clients.

11. FFS hired Garner to attempt collection of the debt from Plaintiff.

### *Misrepresentations of Amounts Owed For Interest and Attorney Fees*

12. On August 19, 2014, Garner filed a collection lawsuit it had prepared in the General Sessions Court of Hamblen County, Tennessee on behalf of FFS. **Copy filed as exhibit 1 to this Complaint (hereinafter "Doc. 1-1").**

13. The collection lawsuit included a civil summons and affidavit of plaintiff's claim ("sworn affidavit"), both of which were served on Plaintiff.

14. The civil summons was filed "**for payment not received in the amount of $13,020.72 plus interest and attorney's fees, if applicable**". **Doc. 1-1, p. 1.** (emphasis added)

15. The signature on the sworn affidavit was signed by Kevin Farmer, who states that his title is president of FFS, and the amount owed was **$13,020.72, plus $4,057.27 interest "at 9.150% interest computed until April 17, 2014, plus interest as it continues to accrue . . . plus contractually provided reasonable attorney fees calculated at 33.33%, if applicable" for a total amount owed as of April 17, 2014 of $21,409.99**. **Doc. 1-1, p. 2.** (emphasis added)

16. The terms of the vehicle loan agreement filed as a late exhibit in the collection lawsuit state, among other things, that:

    (a) The loan is a "simple interest rate loan";

    (b) "Governing law – The interest rate, fees and charges, and other terms of this agreement are governed by federal law. However, to the extent federal law does not apply or refers to or incorporates state law, the law of the state of Ohio shall be applicable"; and

    (c) Plaintiff "represents that [he] will use the collateral primarily for . . . personal, family or household use."

17. **Copy of vehicle loan agreement filed as exhibit 2 to this Complaint (hereinafter "Doc. 1-2").**

18. The maximum interest rate allowed by the laws of the State of Ohio for a consumer credit transaction such as Plaintiff's vehicle loan whose original amount is less than $100,000.00 is eight per cent (8%). **See, Ohio Rev. Code Ann. § 1343.01.**

19. The original amount of the vehicle loan was less than $100,000.00, and the affidavit filed in the collection lawsuit clearly states that interest at the rate of 9.150% is being added to the amount of $13,020.72, and, although the Defendants do not provide an explanation as when FFS allegedly purchased the debt from Huntington, or how they arrived at the amount of $13,020.72 as the "CURRENT BALANCE DUE" or the starting date for when interest should accrue on this amount, the interest being added to the debt is clearly in excess of the amounts allowed under Ohio law. **Doc 1-1, p. 2.**

20. Experian is a consumer credit reporting agency as defined in 15 U.S.C. § 1681a(f), and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing credit reports to third parties.

21. Plaintiff obtained a copy of his Experian credit report dated August 6, 2014, which showed Huntington reported the debt first charged off in November 2010, 120 days after the vehicle loan went into default, and showed an amount charged off of $12,066.00, which it last reported in April 2011. **Copies of the pertinent pages of the credit report are filed as exhibit 3 to this Complaint (hereinafter "Doc. 1-3").**

*Attempting To Collect Interest Waived By Original Creditor*

22. The Office of the Comptroller of the Currency ("OCC") regulates Huntington.

23. Under federal banking regulations, a closed-end loan, such as the vehicle loan extended by Huntington, must be charged off when it is 120 days overdue.

24. The debt may be charged off earlier. Charged off means a bank no longer carries the debt as an asset on its books.[1]

---

[1] See OCC Bulletin 2000-20, "Uniform Retail Credit Classification and Account Management Policy: Policy Implementation" (June 20, 2000), 65 FR 36903.

25. On information and belief, Huntington intentionally does not charge interest after charge off of its closed-end loan receivables.

26. On information and belief, as a standard practice, Huntington waives interest on closed-end loans after charge off for the sound business reason that it did not, and does not want to increase the amount of bad debts on its books, for regulatory reasons.

27. On information and belief, in accord with standard business practices, Huntington prudentially waived interest on Plaintiff's debt after charge off.

28. On information and belief, Huntington, in accord with standard business practices, did not provide any statements to Plaintiff or report amounts to credit reporting agencies after charge off that showed an amount owed greater than $12,066.00.

29. FFS only took what Huntington could give. If Huntington waived interest post charge off, FFS acquired the debt subject to that waiver.

30. On information and belief, the amount of the debt FFS purchased from Huntington or an assignee of Huntington did not include post charge off interest.

31. On information and belief, FFS paid a price for the debt it purchased based on the charged off amount owed to Huntington.

32. On information and belief, it is FFS's standard practice, after paying a price based on an amount that does not include post charge off interest, to seek post charge off interest an original creditor had waived the right to add.

33. FFS was not entitled to collect any interest Huntington would not have collected after charge off. *See, Westgate v. Maryland Casualty Co.,* 147 F.2d 177, 181 (6th Cir. 1945) ("equitable maxim that he who takes the place of another as to any right or property holds it subject to all the rights of the assignor").

34. FFS may not seek more than the amount owed when Huntington took action to waive additional interest on the debt. *See*, *Binswanger Southern (NC) Inc. v. Textron Inc.*, 860 S.W. 2d 862 (Tenn. Ct. App. 1993) ("[A]ssignee of a non-negotiable chose in action, such as a contract, steps into the shoes of his assignor and takes his assignor's rights subject to all defenses which may be asserted against the assignor in an action to enforce the right." *Id.* at 865, *citing*, *Third Nat'l Bank v. Capitol Records, Inc.,* 445 S.W.2d 471 (1969)); *United States v. General Motors Corp.*, 929 F.2d 249, 252 (6th Cir. 1991) ("[R]ights of the assignor and assignee are fixed at the time of the notification of the assignment."); *Stratton v. Portfolio Recovery Assoc., LLC*, 2014 U.S. App. LEXIS 20517, at *10-11 (6th Cir., Oct. 24, 2014) ("PRA cannot be given a right to collect interest—contractual or statutory—that GE waived.")

35. By adding interest to the amount of alleged debt purchased from Huntington that had not been added by Huntington after charge off and demanding an amount that included interest in the collection lawsuit, Defendants violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(2)(B), 1692e(8), 1692e(10), 1692f, and 1692f(1).

36. The amount entered as a default judgment against Plaintiff appears to be $20,852.82, which includes $2,332.00 in attorney fees, and $5,359.60 in interest.

37. It is unclear how the default judgment amount was arrived at as $13,020.72, plus $2,332.00 in attorney fees and $5,359.60 in interest, only totals $20,712.32.

38. Assuming that Huntington did continue to add interest post charge off, the starting point for addition of simple interest at 8.00% per annum would have been the charge off date (November 2010 per the Experian credit report), and the amount owed was $12,066.00, plus interest, then the total amount of interest accrued by June 9, 2015 (date default

6

judgment entered) would only be $4,424.20, almost $1,000.00 less than the $5,359.60 shown on the default judgment. **Docs. 1-3, p. 2, 1-1, p. 1.**

39. Although Defendants failed to provide information in the collection lawsuit that showed the original amount purchased by FFS from Huntington and what date the interest they claim they are entitled to began accruing on the original amount, Defendants are threatening to collect interest at a rate that exceeds the maximum rate allowed by the applicable state law, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(A), 1692e(5), 1692e(8), 1692e(10), 1692f and 1692f(1).

40. Additionally, Defendants requested attorney fees in the collection lawsuit, and, apparently represented to the state court that they were entitled to them, even though there is no mention of attorney fees in the vehicle loan agreement. **Doc. 2, p. 2.**

41. Attorney fees are likely not mentioned in the vehicle loan agreement because Ohio law does not permit recovery of attorney fees in connection with enforcement of any claim that involves "personal, family, or household debt". *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306 (2009) ("Similarly, contracts for the payment of attorney fees upon the default of a debt obligation are void and unenforceable") (citing to *Miller v. Kyle*, 85 Ohio St. 186, 97 N.E. 372 (Ohio 1911)).

42. Despite this prohibition against recovery of attorney fees in connection with enforcement of consumer debt under the laws of Ohio, a state unilaterally chosen by Huntington, and adopted by FFS when it purchased the debt, the request for attorney fees in the collection lawsuit constitutes Defendants' threat to take action that cannot legally be taken and the use of false, deceptive, misleading, unfair, and unconscionable representations and means in connection with collection of the debt or in an attempt to collect the debt, in violation

of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1).

### *Failure To Include § 1692e(11) Language In Subsequent Communications*

43. The FDCPA states: "The failure to disclose . . . in subsequent communications that the communication is from a debt collector", is a violation. 15 U.S.C. § 1692e(11).

44. The civil summons and sworn affidavit were subsequent communications from the Defendants in connection with collection of the debt.

45. General Sessions Courts always have been and are still recognized as informal courts and although the civil summons may be considered a pleading, it is not considered by Tennessee Courts to be a formal pleading.[2]

46. Both the civil summons and the sworn affidavit are subsequent communications from Defendants that are not formal pleadings made in connection with a legal action, and each failed to disclose that the communication is from a debt collector, in violation of 15 U.S.C. § 1692e(11). **Doc. 1-1, pp. 1-2.**

### *Summary*

47. Defendants' above-detailed conduct in connection with collection of the debt was conduct in violation of numerous and multiple FDCPA provisions including, but not limited to the above-cited provisions.

---

[2] *Weaver v. Cromer*, 392 S.W. 2d 835, 836 (Tenn. App. 1965) (citing *Wood v. Hancock*, 23 Tenn. 465, 1844 Tenn. Lexis 138 (Tenn. 1844)). Also see *Vinson v. Mills*, 530 S.W. 2d 761, 765 (Tenn. 1975); *Ware v. Meharry Medical College*, 898 S.W. 2d 181, 185 (Tenn. 1995); *Emrick v. Moseley*, 2014 Tenn. App. LEXIS 448, 2014 WL 3778567 (Tenn. App. 2014).

### *Respondeat Superior Liability*

48. In addition to individual liability under the FDCPA, the acts and omissions of Garner as an agent for FFS and who communicated with Plaintiff as further described herein, were committed within the time and space limits of its agency relationship with its principal, FFS.

49. The acts and omissions by Garner were incidental to, or of the same general nature as the responsibilities it was authorized to perform by FFS in collecting consumer debts.

50. By committing these acts and omissions against Plaintiff, Garner was motivated to benefit its principal, FFS.

51. FFS is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal law by the debt collectors employed as agents by FFS including, but not limited to the above-cited FDCPA violations, in their attempts to collect the debt from Plaintiff.

### **TRIAL BY JURY**

52. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed.R.Civ.P. 38.

### **CAUSES OF ACTION**

### **COUNT I-IX.**

### **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1)**

53. Plaintiff incorporates by reference all the above paragraphs as though fully stated herein.

54. Defendants foregoing acts and omissions constitute numerous and multiple FDCPA violations including, but not limited to each and every one of the above-cited provisions.

55. As a result of Defendants' FDCPA violations, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

**COUNT I-IX.**

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1)**

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff, in an amount to be determined at trial by a jury;

- for an award of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A) in the amount of $1,000.00 against each and every Defendant, and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff; and

- for such other and further relief as may be just and proper.

08/19/15                             Respectfully submitted,

**MARK HILL**

s/      Alan C. Lee
Alan C. Lee, BPR # 012700
Attorney for Plaintiff
P. O. Box 1357
Talbott, TN 37877-1357
(423) 581-0924
aleeattorney@gmail.com